537 So.2d 831 (1989)
FPS, INC.
v.
CONTINENTAL CONTRACTORS, INC. and Stanley Emmons.
No. 88-CA-590.
Court of Appeal of Louisiana, Fifth Circuit.
January 18, 1989.
Writ Denied March 27, 1989.
*832 Harvey Green, Metairie, Clark A. Richard, New Orleans, for plaintiff-appellant.
Gordon K. Konrad, Metairie, David F. Bienvenu, New Orleans, for defendants-appellees.
Before GRISBAUM, DUFRESNE and WICKER, JJ.
DUFRESNE, Judge.
The focus of this appeal is the determination of financial responsibility of unpaid insurance premiums. Plaintiff, FPS, Inc. is an insurance agency which sold various insurance policies to the defendant, Continental Contractors, Inc. from 1976 until 1981. Because of alleged delinquency in premium payments, FPS instituted litigation to recover the arrearages.
During the entire period of Continental's business relationship with FPS, the company was continuously tardy with premium payments or failed to pay the full amount. FPS did not want to lose Continental as a client, therefore, negotiated an arrangement whereby Continental would finance the difference between the premium due and the amount paid.
It was during this time that Continental was doing business with the defendant, South Central Bell Telephone Company. Before Continental could qualify as a contractor for South Central Bell, it had to increase insurance coverage. Accordingly, FPS and Continental agreed on the terms and conditions of the insurance in order to satisfy the requirements of South Central Bell. A certificate of insurance was forwarded to South Central Bell evidencing adequate coverage. Although it appeared that all insurance coverage was placed and there was financial stability, it was a calm before the storm. Shortly thereafter, Continental began to experience economic difficulties and failed to fully pay its insurance premiums. The unpaid balance grew from $3,844,11 in April of 1977 to amount exceeding $153,000.00 in September of 1981.
The record indicates that South Central Bell was not aware of the delinquency until the insurer, The Kemper Insurance Companies, sent a notice of insurance cancellation in January 1982.
In June 1982, FPS filed this lawsuit against Continental and Stanley Emmons, the sole shareholder of Continental, to recover unpaid premiums owing on the issued insurance policies. The policies were issued to Continental naming Continental and Emmons as named insureds on all policies.
FPS contends that Emmons personally advised FPS that he would be responsible for the payment of premiums on behalf of Continental.
Three years later, on March 14, 1985, FPS filed its Third Supplemental and Amending Petition naming South Central Bell and Leasing Services, Inc. as additional defendants. South Central Bell and Leasing Services, Inc. were named "additional insureds" on various endorsements to policies issued to Continental.
FPS contends that South Central Bell and Leasing Services, Inc. benefited from the insurance policies and are, therefore, obligated to pay the unpaid premiums. Although the proceedings against Leasing Services, Inc. were stayed as it was (and remains currently) in receivership, the trial court reasoned in favor of FPS as against Continental in the amount of $158,592.33. However, the court found that Emmons *833 and South Central Bell were not responsible for any unpaid insurance premiums. As a result of the trial court's judgment FPS has appealed asserting error because of the trial court's failure to hold Stanley Emmons and South Central Bell Telephone Company responsible for the unpaid insurance premiums.
After reviewing the evidence found in the record we disagree with FPS's contention and find the record void of trial court error. Accordingly, we affirm.
The evidence discloses that Continental, pursuant to a Master Service agreement, contracted with South Central Bell to perform various services over a period of years. Article 10 of the agreement required, as consideration for the contract, that Continental provide insurance coverage for South Central Bell at its expense.
The record reveals that Continental and South Central Bell agreed and understood that Continental would be responsible for all insurance premiums. In fact, South Central Bell had no control or supervision over Continental's procurement of insurance or the terms and conditions of payment to the insurer.
Mr. David Abramson, an insurance agent associated with FPS, serviced the Continental account. When Continental failed to pay the premium payments, Mr. Abramson never contacted South Central Bell to give notice. The record shows that South Central Bell was not advised of the delinquency until the insurance policies were cancelled in 1982.
Mr. Abramson testified that FPS sent certificates of insurance to South Central Bell, Leasing Services, Inc. and other interested parties, certifying the insurance coverage of Continental. Abramson's sole contact with South Central Bell was to confirm insurance adequacy of Continental.
FPS never considered Continental as an agent of South Central Bell to procure insurance coverage. Mr. Abramson testified that he understood that Continental and South Central Bell were two separate corporate entities, and in order for Continental to get contracts with South Central Bell, it was necessary that Continental satisfy South Central Bell's insurance requirements.
The testimony of Bushnell Seavey, president of FPS substantiated the testimony of Abramson. Mr. Seavey testified that FPS had no written or oral agreement with South Central Bell regarding any payment of premiums.
It is clear from the evidence in the record that South Central Bell had no notice that Continental was carrying insurance coverage pursuant to a delinquent account with FPS. Moreover, no one from FPS ever contacted a representative of South Central Bell to inform them that Continental had failed to pay premiums, or to request that South Central Bell assume responsibility. FPS has failed to give sufficient evidence which would substantiate its allegation that South Central Bell acquiesced or agreed to any premium payment.
The insurance policies admitted into evidence, contained no language expressly (or implicitly) stating that additional insureds are liable for premium payments.
While no Louisiana case has been found specifically addressing this issue before us, we hold that any attempt to recover unpaid insurance premiums from additional insureds will be denied absent a contractual relationship establishing payment of premiums between the party seeking relief and the additional insured.
Regarding our review of the insurance policies, the law is clear that such policies shall be interpreted as any other contract. Employers Ins. of Wausau v. I.D.S.O. Investments, Inc. 410 So.2d 786 (La.App. 4th Cir.1982); Savoie v. Fireman's Fund Insurance Co., 339 So.2d 914 (La.App. 3rd Cir.1976).
In absence of privity, there can be no contractual liability. Pickets v. Brown, 431 So.2d 880 (La.App. 2nd Cir.1983). Regarding insurance premium payments, the trial court properly found no privity to any agreement between FPS, South Central Bell and any of the insurers, nor between FPS, South Central Bell and Continental. To the contrary, the trial court found that *834 the insurance coverage at issue was agreed to exclusively between FPS and Continental, and FPS and the insurers.
Does FPS have any legally viable claim for unjust enrichment? We find no legal basis for any assertion for unjust enrichment. Our Supreme Court has set forth the elements of unjust enrichment in Minyard v. Curtis Products, 251 La. 624, 205 So.2d 422 (1967). In order to prevail, the plaintiff must prove each of the following elements: (1) defendant was enriched; (2) plaintiff was impoverished; (3) there is a connection between defendant's enrichment and plaintiff's impoverishment; (4) there was no legal cause or justification for the enrichment; and (5) there is no other remedy available for the plaintiff.
There is no evidence to suggest FPS's impoverishment as a result of any commission or omission by South Central Bell. In fact, the impoverishment which FPS has suffered is a result of its own failure to secure payment for insurance premiums prior to issuing the policies. Its impoverishment continued despite the delinquency of Continental's account, yet FPS did nothing to notify, and had no reason to notify, South Central Bell that Continental was not paying its debt.
The legal cause or justification for the alleged "enrichment", i.e., the naming of South Central Bell as an additional insured, was South Central Bell's granting of the contract to Continental. Continental, in exchange, contracted for the benefit of insurance coverage for South Central Bell. The very character of this third party beneficiary situation further negates any claim for unjust enrichment.
FPS indeed had another remedy available, specifically, to collect the debt from Continental. This is apparently what FPS attempted by initially filing suit against only Continental and Stanley Emmons.
Lastly, we do not find any agency relationship between Continental and South Central Bell. The contract expressly states that insurance is to be purchased at FPS's expense.
With respect to the defendant, Stanley Emmons, the sole shareholder of Continental, we agree with the reasons outlined by the trial court, denying FPS recovery against him.
Although Mr. Seavey contends that Emmons personally obligated himself to pay the insurance premiums, we find insufficient evidence to substantiate this allegation. The evidence in the record does not preponderate in favor of FPS's allegation that FPS and Emmons had an agreement that he (Emmons) would pay or guarantee payment should his corporation fail. We do not believe Emmons agreed to be personally liable for payment of a corporate debt. To the contrary, we do not find any meeting of the minds between Emmons and Seavey. Consequently a crucial ingredient for the perfection of a contract is missing.
The trial court properly viewed the evidence in favor of Emmons. FPS always expected Continental to satisfy its obligations and is legally barred from collecting from someone (Emmons) who was not an obligor.
For the above reasons, we find the judgment and reasons of the trial court without error and accordingly, affirm.
AFFIRMED.